Our final case for today is Marcus Gray v. Marcus Hardy. Gray v. Hardy. And we'll start with Mr. Campbell. Good afternoon, Your Honors. May it please the Court, my name is Joe Campbell. I am appointed counsel for the appellant in this case, Marcos Gray. This Court has repeatedly recognized that for claims involving conditions in the confinement, a fact-intensive inquiry is required because there is no static test as to what constitutes cruel and unusual punishment under the Eighth Amendment. Here, Mr. Gray's claims did not receive a fact-intensive inquiry. In the summary judgment ruling, the court below should be vacated because Mr. Gray, acting pro se in the court below, brought forward sufficient evidence regarding both the objective seriousness of the conditions of his confinement and the warden's deliberate indifference to those conditions to raise the fact issue and defeat the warden's summary judgment motion. So can I ask a clarification question? Sure. Gray has alleged that the only cleaning supplies he gets are a towel that is replaced every eight months and this diluted disinfectant solution. Does that mean the towel isn't washed for eight months, or does that mean that a new towel appears but it's been laundered, but during the eight months it's been laundered? Right. So from the facts on the record in the court below, the only facts that we have are that the towel, Mr. Gray received a towel that was distributed once every eight months and that additional towels were available for purchase at the commissary, but new towels are not distributed by the prison. So we don't know if it's, I mean, I can't even imagine what it looks like after eight months if it hasn't been laundered. Right. And, I mean, I suppose Mr. Gray perhaps could use his sink to rinse it, but it's not clear whether those towels were laundered or not. So maybe we should talk about the relation of this case to the Dobby v. Wilding class action. So, yeah, so there's the pending class action currently in the Northern District of Illinois, the Dobby v. Wilding class action, that is a class of inmates at Stateville where Mr. Gray is housed, and, in fact, Mr. Gray is a member of that class. And it's a B-1, B-2 class. Right. So he does not have opt-out rights. Right, right. So he is automatically a member of that class. Now, Mr. Gray is seeking monetary damages in this case, and, of course, the Dobby class action seats only declaratory and injunctive relief. Should this case be remanded, we do think that consolidation with the Dobby class may be appropriate for the purposes of determining liability. So if we did something like say that his claim should be severed so that the liability portion joins the Dobby class and the damages portion is put on hold pending the resolution of Dobby, then, of course, if there's a finding favorable to the state in the class action, that's the end of things. You know, nobody will ever reach his remedy, right? Right. If his case was consolidated for liability and then... Right. And then if, in fact, there is a finding of liability in the B-2 class action and some kind of declaratory and injunctive relief, you would foresee that, at that point, the district court would go back to the individual cases that have been filed and figure out some methodology for the damages half of the case? Right. I mean, it seems a little strange to jump ahead of the Dobby case, which seems to have allegations in it that are exactly the kinds of allegations he's making. Right. And Mr. Gray's claim was filed before the Dobby class action case was filed, which is how it is at this stage, before the Dobby class action has reached the merits. Would you just talk about deliberate indifference? Because there's a lot of crummy things going on with the various little varmints running around and all that kind of stuff. But it seems that they, I don't know whether it's Dobby or whoever else, they're trying to remedy the situation. There's a lot going on to, they say, clean it up and get rid of the bugs and do this, that, and the other thing. So they're not ignoring it. At least that's what I understand from the record here. So the warden, Mr. Hardy in this case, has taken some action to alleviate some of these conditions. But this court has recognized in Greeno that a plaintiff to establish deliberate indifference does not need to show that the conditions were ignored. Rather, the question is whether the action taken was appropriate given the conditions alleged. So whatever's going on is insufficient, I guess, is that what you're saying? Right. So the district court did not consider the deliberate indifference prong, but the primary action taken by the warden in this case is a, they have a contract with a pest control agency, and this pest control agency comes out every month or every few weeks to spray for crawling insects and mice. But Mr. Graves claims that it's this pest infestation combined with the broken windows that allow birds to enter the facility, to deprecate all over the facility, combined with the denial of access to cleaning supplies that contribute to this unsanitary environment, and the warden is not taking appropriate actions to combat that. There's no evidence to indicate that he has fixed these broken windows, that he has done anything to alleviate the problem of no cleaning supplies to alleviate this unsanitary environment. So that amounts to cruel and unusual punishment. Right. I mean, that's what I'm looking at the offset. Is it cruel and unusual punishment, and the warden is deliberately indifferent to what's going on, or is it reliable, I guess, is what you're saying. Right. So we argue that at summary judgment, Mr. Graves brought forward sufficient evidence truthing to a fact that the conditions he complained of were objectively serious and that the warden's actions were not appropriate such that the warden was deliberately indifferent to those conditions. Well, as far as watered down, I guess, disinfectants or whatever it is, we're also concerned about what a prisoner could do with that if it were more costly. There are security rationales, and we don't dispute the fact that prison officials can take certain measures to ensure the safety of inmates and the safety of guards. But the court in Mejia recognized that security concerns, there still has to be some effort to provide inmates with cleaning supplies. Here, Mr. Gray demonstrated he was denied access not only to cleaning chemicals but to mops, to brooms, to buckets, and he was not only prohibited from keeping those items in his cell, but he was denied access to those items at all times. The cases the government points to all actually indicate that the defendants in those cases produced evidence showing that the inmates were provided cleaning supplies at certain times. For example, in Mitchell, the government produced evidence showing that plaintiffs were provided mops, and brooms, and buckets, and in Jones, the same thing. Here, Mr. Gray has demonstrated that he is completely denied access to those items. I thought he was able to buy some things if he wanted to at the commissary, although I guess he'd have to throw away whatever he didn't use since he's not allowed to store it. Aren't there some supplies he can get there? I believe it was indicated in his deposition that he could buy, for example, towels and perhaps certain cleaning chemicals at the commissary. There's no indication that he had any availability to buy brooms or mops or buckets, and there's no indication that the government... Some kind of benign soaps and so on are not available there? There's no evidence to the record as to what is available at the commissary. And there is evidence, I take it, from your perspective, that this is a cumulative thing. It's the birds flying all over the place and not fixing the windows so they don't come in to begin with because they nest in places that are difficult to reach, and the waste winds up in the air. Now he has, of what relevance, maybe I'll let you sit down in a minute, but you've also alleged that he has asthma and that it's been exacerbated by his being forced to live under these conditions. Right. So does that distinguish him from the remainder of the Dobby class, or what's relevant about that? Right, so Mr. Gray does have asthma. That's undisputed. That would go more toward, I think, his damages claim than the injunctive or declaratory relief. Okay. I'm going to say I'm in right about all time. If there's no other questions, I'll reserve my time. That's fine. Thank you. Mr. Siegel. Good afternoon, and may it please the Court, Counsel, and Assistant Attorney General Evan Siegel, here on behalf of the former warden of State Folk Correctional Center, Marcus Hardy. Your Honors, the Eighth Amendment has never required pristine prison conditions, or even comfortable ones. This is pretty far from pristine. I mean, I have the same question for you that I did for Mr. Campbell. There has been a certified class action with, I mean, other things too, but certainly among the things listed in the materials for that case, are these problems with the birds and the mice and the spiders and the cockroaches and all the rest of these things. It seems, and this is not a situation unlike one of the Northern District of Illinois cases, which seems just to have been mistaken, where anybody has a choice about whether to be in the class or not, to be too class. So it's hard for me to imagine why the efficient disposition of this case isn't just to let this abide the outcome of DAVI. Well, if this Court were to decide that summary judgment was granted incorrectly and then to remand the case. And why these conditions would not, taken in the aggregate, give somebody an intolerable living environment. I tell you, it wouldn't take too many cockroaches for me to feel that way, but maybe I'm just unusually sensitive. They have to bite, actually. Cockroaches don't have to bite. Under one of this Court's holdings. No, we've never said as a matter of law that the bugs have to bite. At one end of the spectrum, perhaps. But to your question about DAVI, there are definite efficiencies because of the overlap that Your Honor mentioned in the claims, but we believe that there are inefficiencies that might outweigh those efficiencies. One thing, for instance, is that in Eighth Amendment claims, the objective analysis, as we've heard a bit here this morning, are somewhat particularized. But this is the same institution and the same, at least many of the same conditions. Filth in the environment, maybe I could generalize. And so I'm not sure why particularizing. I mean, if somebody were complaining about this and at the same time TAMS or something, that's totally different. I wouldn't see any reason there. Another inefficiency is that, and I guess this is a broader consideration for the Court, but there are at any given time in the Northern District 10 or 12 other state bill cases. And so absent the existence of this class action, it's not clear to me that this Court would say, for instance, that Judge Dow should, because his case is more advanced than some of those others, hear all of those cases together. Well, maybe I could follow up on something that was said earlier, Mr. Siegel. If the Dobby case results in a finding of both objectively serious conditions and knowledge and inadequate response, that would seem to suggest that injunctive relief would be appropriate. And the district judge would do what district judges do in those cases. But that's in at least two major respects short of a finding that would support liability for money damages against any individual. At least it would seem to me. You may have a longer list than I do. But in essence, was the warden trying to take reasonable measures, an issue that really hasn't been briefed to us and was not reached by the district court, and of course the defense of qualified immunity under these circumstances, all of which in any case seeking money damages would be on the table. Is that right? Yes. Okay. So you could win this if we send it back and say wait to see what happens in Dobby. You could win it in Dobby. And then it might be that what you need to do is a little bit later trial, if you lose it, a little bit later trial, that would focus on those other case-specific issues relevant to damages. That's right. Doesn't that sound like a good idea? It could be. It's a close call. We do not have strong opposition to sending it back to Judge Dow. It may be also a third consideration I'll just mention briefly. If you look at the docket sheet in that case, I think it's remained pretty static since spring or summer. I don't think we would order Judge Dow that he has to hear this. In any event, the district court reached the correct conclusion on summary judgment because the Eighth Amendment requires an objectively serious harm. And let me contextualize that. It requires a sufficiently serious harm that a medical doctor would be concerned about. No, no, I don't know that you – this is a conditions of confinement cases. We've certainly seen our share of medical cases, but sometimes it's too cold, and sometimes it's filthy, and sometimes – there are a variety of ways in which conditions can be so bad that the Eighth Amendment itself is implicated. But they have to be serious enough to implicate a substantial harm or risk of harm to the plaintiff. And certainly this court's decisions in Sane and Antonelli distinguish on a continuum between did this inmate or civil detainee suffer sufficient wounds, were there a swarm of insects and infestation that attacked the inmate. So we don't have any of that here. That's the key thing. I don't know. I mean, we do have allegations of mice being there all the time, cockroaches. The dirt alone that these things leave behind, so to speak, is quite unhealthy. Mice often are rabid. Well, there's no case decided by this court that I'm aware of that holds that the presence of an occasional mouse triggers an Eighth Amendment violation. But that's not what he says it is. He doesn't call it an occasional mouse. He says that he was victimized by a mouse. That's what he says in his deposition. He says that he was victimized because the mouse knocked over food, that he was warned against- He was eating his food, I believe, he said. Eating his food and knocked some chili onto his prison uniform. That's because he stores the food in his cell. He insists on eating each meal in his cell. How can he do that? That's just really weird to me. And, of course, that's one of the things that attracts the mouse. Maybe I get back to it, but why was he not going to lunch? I don't go to lunch. That's my problem, but that's different. It's not specifically explained in the record, Your Honor, but I think we could infer that maybe he was under some sort of protective custody or something like that. Do you have enough money to get enough food to eat in your cell? I bet the prison was bringing it to him in his cell, and if they were, it was probably for some violence-related reason. Some of these items we can infer were commissary purchase because there was granola and cereal. There's no reference to hot meals. But, Your Honor, to your point, none of these incursions, if you will, of birds, mice, insects, individually or collectively add up to an Eighth Amendment violation. Now, we could parse them. But you have to look at it. Don't look at them individually because they are collective. But they are all individually, if they're not zeros constitutionally, they're very close to zeros. You don't think inhaling fecal dust from birds is unhealthy? I don't think there's any medical evidence in this record that it's caused any of this plaintiff's problems. He says that it has exacerbated his asthma. He says that, but he's not a medical expert. No, but he does have medical records from the prison to show that the frequency of his visits has increased and he's been treated by the prison doctors who are medical experts. Undoubtedly. But he came into the prison at 24 with asthma, and now he's close to 40, and there's also evidence in the record. Now he was in the Cook County Jail for seven years without problems. Well, but we don't have anything, any reliable medical evidence in the record about causation. There's correlation to be sure, but also he was told by one of his medical examiners that stress could be a cause of his breakouts as well. This is not a disputed issue of material fact. We just don't have causation here. If I can turn to the question that Your Honor had about the towels, I think page 398. It's perhaps not as bad as it sounds. There's nothing in his testimony that says he was given a new towel every eight months. What he says is that new towels were provided and new clothing was provided every eight months, but that doesn't mean that those towels were not washed. Well, they send it all to laundry, I guess. Yes. There's nothing in the record to suggest that they weren't. There's something in the record that says they do send it to the laundry? There is not something that I can point to. All right. Well, I hope they do. I'll just leave it at that. If I could just wrap up, Your Honor. Certainly. The state did everything possible to provide a clean environment.  None of that lowered the Eighth Amendment floor to allow Mr. Gray to prevail on summary judgment. Okay. Thank you. Thank you very much. Anything further, Mr. Campbell? Thank you, Your Honors. The conditions in this case do have to be considered in their cumulative effect. This Court has recognized that cumulative conditions of confinement may violate the Eighth Amendment when they have the mutually enforcing effect of depriving an inmate of a basic human need, like the need for a sanitary environment, even if taken singly, those conditions do not violate the Eighth Amendment. Now, on the issue of Mr. Gray's asthma, it's undisputed that Mr. Gray does have asthma, that he's consistently been treated for breathing-related difficulties, and that he testified that these conditions, these unsanitary conditions, aggravated his asthma and made it difficult for him to breathe. In fact, this Court recognized in Thomas that cockroaches, for example, pests carry bacteria that can aggravate inmate asthma, just like the conditions Mr. Gray alleges here. And because Mr. Gray did present sufficient evidence that it was not adequately considered that the cumulative conditions of his confinement were objectively serious and that the warden's actions were not appropriate, such that the warden was deliberately indifferent, remand is appropriate here, and perhaps consolidation for purposes of viability with the Dobby class. All right. Thank you very much. And you were appointed, were you not? I was. We appreciate your assistance to the Court and to your client. Thank you as well, Mr. Siegel. We'll take the case under advisement.